UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

07CR237S

v.

**Report
&
Recommendation**

Odell Rainey,

Defendant.

_____

Before the Court is the defendant's motion seeking suppression of evidence.  (Docket No.

11).

**Background**

On October 3, 2007, a Grand Jury indicted defendant Odell Rainey ("Rainey") with

unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) [Count I],

unlawful possession of a substance containing cocaine base in violation of 21 U.S.C. § 844(a)

[Count II], and forfeiture of the firearm and ammunition found in his possession [Count III].

A hearing on the suppression motion was held on May 13, 2008.  Buffalo Police Officer

Mark R.  Constantino testified that on June 11, 2007, he along with Officers Jeffrey Weyand and

John Molenda, went to 185 French Street in Buffalo, New York to seize a violent dog. (R. 4).

According to Constantino's testimony, there had been several complaints from neighbors

concerning a Rottweiler at that address weighing approximately 120-pounds allegedly attacking

people. (R. 4-5, 7).   Weyland testified that a day earlier (June 10, 2008), he and Molenda went to

185 French Street to investigate a complaint by a woman stating that her 15 year-old daughter

might be in the house at that address doing drugs or having sex. (R. 61).   Weyland stated that the

dog acted aggressively towards them, hanging over the top porch threatening to "jump down on"

them (R. 62).   While the officers were at that location, another woman walked by and informed

the officers that the dog had actually jumped off the porch and bit someone in the past. (R. 63).

Weyland stated that it did not appear that anyone was inside the home at that time and that they

did not have enough information to take any further steps with respect to investigating the

whereabouts of the 15-year old girl.  (R. 63).  The officers changed their focus to the dog.

Weyland stated that "dog control" was not working that day so they determined to come back the

next day, June 11, 2007.  Constantino testified that the dog had previously been seized on another

occasion, but the dog was eventually returned to the owner. (R. 5-6).

It appears that 185 French Street includes two apartments: a lower, in which the defendant

resides; and an upper, in which Larry Rainey, the defendant's brother, resides.  There was a

common hallway leading to the doors to the respective apartments.  According to Constantino, the

internal doors were open allowing for the possibility that the dog could be in either the upper or

the lower apartment (R. 8, 11-12, 64).  When the officers arrived at 85 French Street on June 11,

2007, they knocked on the outside door leading to the common hallway.  Larry Rainey answered

the door. (R. 9). The officers immediately observed a Molotov cocktail (an explosive device) on

the floor by Larry Rainey's feet. (R. 9, 21).  Larry Rainey was arrested and placed in a patrol

vehicle, and the Buffalo Fire Department was called to come and deal with the Molotov cocktail

(R. 9-10).  Constantino testified that the officers then knocked on the door of the lower apartment

and that Rainey answered the door. (R. 10). According to Constantino, personnel from the dog

control unit were also present at this time. (R. 10).  Constantino testified that he advised Rainey

why they were there and asked permission to "go in" and seize the dog. (R. 10).  Constantino

stated that Rainey gave the officers permission to do so, and they went into his apartment and

began checking for the animal.  Constantino checked a bedroom which was right off the living

room.  According to Constantino, the closet door was open, and that without having to move

anything out of the way, he observed a .22 caliber rifle.  (R. 11).   Constantino secured the rifle

and brought it to his patrol car (R. 12).  He informed Rainey that a rifle had been recovered, and

asked him "what he was doing with the rifle."  Rainey allegedly stated that he knew he "should

not have one." (R. 12). Notes taken by agents from the Bureau of Alcohol, Tobacco and Firearms

("ATF") during a debriefing with Constantino state that Rainey told Constantino that there was a

gun in the closet and that he was not supposed to have a gun. (R. 14).

     Upon cross-examination, Constantino testified that he was aware that the dog was vicious,

that the dog would bark a lot when people came hear the house, and that on an occasion in 2005

he pulled out his firearm while assisting a dog catcher sent to seize the dog. (R. 16).  Constantino

could not recall whether he heard the dog barking when they went to 185 French Street on June

11, 2007.  He stated that he believed that the dog was eventually seized on that day. (R. 22).

Constantino stated that he had previously discussed the dog with Larry Rainey and that Larry

Rainey had told Constantino that the dog was his. Further, Constantino acknowledged that he had

also previously spoken with Larry Rainey Sr., the defendant's father; that Larry Rainey Sr. had

previously lived in the lower apartment at 185 French Street, and that Larry Rainey Sr. had

advised Constantino that he did not want anything to do with the dog. (R.  26-27).  Constantino

testified that he did not know whether Larry Rainey Sr. still lived in the lower apartment of 185

French Street on June 11, 2007 and that he believed the dog could be in either apartment. (R.  28).

Constantino acknowledged that a report prepared by Weyand pursuant to §710.30 of the New

York Criminal Procedure Law ("C.P.L. §710.30 notice") indicated that no incriminating

statements were made by Rainey. (R.  33).  Constantino testified that he neglected to tell Weyand

about the statements by Rainey. (R.  58).  Constantino also testified that it is possible that he

would have asked Rainey if there were any weapons in the house. (R.  34).

Rainey was ultimately charged with unlawful possession of a weapon.  He was also

charged with unlawful possession of a controlled substance (cocaine base) which was also

allegedly found while at search his apartment at 185 French Street for the dog.  During the

suppression hearing, the government represented that the officer, Paul Mullen, who allegedly

found the drugs was not available to testify as to the circumstances under which the drugs were

discovered. Thus, the government conceded that evidence of the drugs would need to be

suppressed. (R.  59).   The only remaining issues relate to the circumstances under which the

officers entered Rainey's apartment, observed the .22 caliber rifle and whether Rainey made any

incriminating statements.

**Discussion**

**Deferral of Decision**

The defendant has asked the Court to defer issuing a Report & Recommendation with

respect to the instant motion to suppress evidence until a transcript of a suppression hearing to be

held in a separate prosecution against Larry Rainey, relating to his alleged possession of the

Molotov cocktail, can be obtained (United States v. Larry Rainey, 07CR272).  The defendant

asserts that Constantino will be called to testify in that hearing and that his testimony will bear on

the credibility of his testimony in the instant case. (Docket No. 20 at page 2).

The government contends that although the charge against Larry Rainey arises from the

June 11, 2007 incident, the issues to be explored in the suppression hearing in that case relate to

the recovery of the Molotov cocktail in the common hallway at 185 French Street, and ***will not***

address the circumstances of Odell Rainey's consent to enter his apartment, the observation of the

firearm in that apartment, or any statements made by Odell Rainey.  (Docket No. 23 at page 2).

The Court is not convinced that it is necessary or appropriate to defer the determination of

the motion for suppression of evidence in this case until a hearing is held and a transcript can be

obtained in the separate prosecution against Larry Rainey.  It is not apparent that the material

issues relating to whether or not Odell Rainey gave the officers permission to enter his apartment

to search for the dog will be addressed in the suppression hearing regarding the charges against

Larry Rainey.  The Court notes that the defendant has already raised the issues relating to

inconsistencies between the testimony of Constantino and the C.P.L. §710.30 notice prepared by

Weyand reflecting  that Rainey did not make any incriminating statements.  The defendant has not

articulated a basis to conclude that this issue would be further explored at the suppression hearing

in the prosecution of Larry Rainey.  The motion to defer determination of the suppression issue in

this case is denied.  If appropriate, the defendant can make an application for reconsideration

should evidence material to this case be revealed in the other prosecution.


**Entry into Rainey's Apartment**

The defendant argues that he did not give knowing and voluntary consent for the officers

to enter his apartment to look for the dog and that the search exceeded any consent that had been

given. The defendant also asserts that the testimony as to incriminating statements made by

Rainey is incredible due to inconsistencies with the C.P.L. §710.30 notice.

Initially, the defendant argues that the officers did not have a warrant to enter the

apartment and that no exigent circumstances existed to justify their entry. (Docket No. 18 at page

6).  The government does not contend that entry was made pursuant to a warrant or that exigent

circumstances existed justifying the officers entering the apartment in this case.  Instead, the

government contends that Rainey gave consent for the officers to enter the apartment to search for

the dog, and that the illegal firearm was discovered in plain view during that search. Thus, the

defendant's arguments that the government could have or should have obtained a warrant do not

determine the validity of the officer's entry into Rainey's apartment.

Although warrantless searches of private property are generally presumed to be

unreasonable, the law recognizes certain exceptions, for example, when the search is conducted

pursuant to the consent of an authorized person. Schneckloth v. Bustamonte, 412 U.S. 218, 219

(1973); United States v. Lewis, 386 F.3d 475, 481 (2d Cir.2004) (recognizing that where

authorized party consents to search "neither a warrant nor probable cause is necessary").  The

Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit

means, by implied threat or covert force. Schneckloth, 412 U.S. at 228.  When the government

relies on consent to justify a warrantless search, it bears the burden of proving by a preponderance

of the evidence that the consent was voluntary. United States v. Isiofia, 370 F.3d 226, 230 (2d

Cir.2004). Voluntariness is determined by reference to the " 'totality of all the circumstances.' "

Isiofia, 370 F.3d. at 231 quoting Schneckloth, 412 U.S. at 227.  While more than "mere

acquiescence in a show of authority" is necessary to establish the voluntariness of a consent,

(United States v. Wilson, 11 F.3d 346, 351 (2d Cir.1993)), the fact that a person is in custody or

has been subjected to a display of force does not automatically preclude a finding of voluntariness.

See United States v. Ansaldi, 372 F.3d 118, 129 (2d Cir.2004) (holding that use of guns to

effectuate arrest and handcuffing of defendant did not render his consent to search his home

involuntary).

In the instant case, both Constantino and Weyand testified that Rainey consented to allow

the officers to search his apartment for the dog.  This evidence is uncontested in the record.  The

Court finds that the testimony of the officers is credible in this regard.  The defendant has not

argued, and the record does not reflect, that the consent of Rainey to enter and search his

apartment was the result of any form of coercion.  Instead, the defendant asserts that the search of

his apartment was not reasonable in light of the officers' knowledge that the dog lived with Larry

Rainey Jr. in the upper apartment and that there was no probable cause to believe that the "large,

aggressive animal was quietly hiding in Odell Rainey's bedroom or his closet." (Docket No. 18 at

page 8).  Considering the totality of the circumstances, the Court cannot conclude that the officers

could not have reasonably believed that the dog was in the lower apartment.  The information that

Larry Rainey Sr. did not want "anything to do" with the dog was more than a year old and the officers were not even certain that Larry Rainey Sr. still lived in the apartment.  Inasmuch as the apartments were occupied by members of the same family, it was reasonable for the officers to believe that it was possible for the dog to be in either apartment. The Court cannot conclude that the search of the lower apartment was unreasonable under the facts of this case.  The defendant also contends that the testimony as to the consent to enter is not credible because the recollection of Constantino was inconsistent with the C.P.L. §710.30 notice and that Weyand was not even certain whether it was Larry Rainey or Odell Rainey who initially answered the outside door.[1] The Court finds that the testimony of Constantino and Weyand sufficiently specific and credible on the issue of whether Odell Rainey gave consent for the officers to enter his apartment to look for the dog.  The Court also finds credible Constantino's testimony that the rifle was discovered in plain view in an open closet in Rainey's bedroom.  Thus, the rifle was properly seized. Minnesota v. Dickerson, 508 U.S. 366, 375 (1993).  Finally, Odell Rainey does not claim, and the record does not reflect, that he was in custody when asked about the existence of any weapons in the apartment. The defendant suggests that the fact that the statements were not listed in the C.P.L. §710.30 notice undermines the credibility of Constantino's testimony.  Constantino testified that he did not prepare the C.P.L. §710.30 notice, and that he had neglected to advise Weyand (who prepared the notice) of the statements made by Rainey.  The Court finds this testimony credible. The defendant has presented no basis warranting the suppression of the statements made by

---

[1]   Weyand testified that he thought it was Odell who initially answered the outside door, but that he was not certain.  (R.  65-66, 73).  Based upon the testimony of Constantino, as well as the documentary evidence in the record, it appears that Larry Rainey answered the front door and was arrested for possession of the Molotov cocktail. See Government Exhibit No. 1.

Rainey as to the possession of the firearm.

Based on the above, the motion to suppress the evidence and statements made by Rainey on June 11, 2007 should be denied.

**Conclusion**

Based on the above, it is recommended that the motion to suppress the evidence obtained from the defendant be denied.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
August 15, 2008